Gary La BARBERA; Lawrence Kudla; Dennis Gartland; Thomas Gesualdi; Theodore King; Chester Browman; Frank Finkel; and Joseph Ferrara as Trustees and Fiduciaries of the Local 282 Welfare, Pension, Annuity, and Job Training Trust Funds, Plaintiffs,

v.

H & L TRUCKING SERVICE, Defendants.

No. CIV.A. 99–4327.

United States District Court, E.D. New York.

Oct. 9, 2002.

Michael Bauman, New York City, James R. Grisi, New York City, for Plaintiffs.

H&L Trucking Service, Holbrook, NY, pro se.

## MEMORANDUM AND ORDER

YOUNG, District Judge.[1]

This action, brought by the Trustees of Local 282 [2] Welfare, Pension, Annuity, and Job Training Trust Funds ("Trustees"), seeks to compel H & L Trucking Service ("H & L") to make contributions to various union funds. Resolution of this dispute hinges on the extent of the union pension fund trustees' ability unilaterally to change contribution requirements relating to collective bargaining agreements.

## I. INTRODUCTION

Among the benefits provided to union members are pension benefits and medical benefits (health insurance). In order to qualify for these benefits, union members must work a specified number of hours. For instance, after initial qualifications have been met, a union member in Local 282 must work 120 hours every quarter (three months) in order to maintain eligibility for medical benefits. These benefits are funded by employer contributions, which are calculated based on the number of hours each employee-member works. Though union members may qualify for benefits having only worked a minimum number of hours, most members work a full work week—they need the money. Thus, the employer contribution for most members is based on full time work—480 hours per quarter—which adequately covers the anticipated costs of coverage.

If a union member also owns an employer, however, there is potential for abuse of this system. An employer-member can report working [3] only the minimum number of hours to qualify for benefits, while actually working full-time—480 hours per quarter. Because the member is the owner, the member can either distribute company profits to account for the income shortfall or alter the accounting books to camouflage the deception. The result of this deception is that an employer-member and their entire family continually obtain benefits far in excess of their contributions to the fund. As the cost of benefits are uncompensated, over time other members must pay at an increased contribution rate lest the benefit fund lose money, and be unable to pay benefits required.

The Trustees, aware of this potential for abuse, and aware of the fund's obligation to pay benefits irrespective of whether contributions are made to the fund, conducted an investigation into the practice. The investigation revealed that this practice occurred with some frequency. The deceit was generally perpetrated in situations wherein the employer (e.g., the trucking company) was wholly owned (100% owned) by one family—husband and wife, parents and children, or the like.

In the face of such activity, the Trustees decided to presume that employer-members of wholly owned companies had worked 40 hours per week, and to require them to make contributions as if they had in fact worked 40 hours per week—regardless how many hours they had reported or actually worked. This came to be known

---

1. Of the District of Massachusetts, sitting by designation.

2. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers Local 282.

3. "Working," in this context and throughout the opinion, refers only to engaging in specif-

ic, union-covered, activity—truck driving, for instance. Thus, an employer might report 15 hours working in covered activity and have worked a 60–hour work week, with the remaining 45 hours spent doing non-union work such as bookwork.

as the "100% rule," and was implemented in May of 1998 and apparently made retroactive to 1993 (the date the then current collective bargaining agreement came into effect).

H & L is wholly owned by Humberto Castro's ("Castro") wife. Thus, H & L is within the class of employer to whom the 100% rule is intended to apply.[4] Prior to notifying employers of the 100% rule's proposal or implementation, the Trustees ordered an audit of various employers—pursuant to valid authority conferred by the then-in-effect collective bargaining agreement—including H & L. H & L's audit disclosed that Castro had reported working and had made contributions, but that he had neither worked 40 hours per week nor made contributions to that extent. The Trustees applied the 100% rule to Castro's prior employment, and determined that he owed substantial back contributions reflecting what H & L would have contributed had Castro worked 40 hours per week. Tellingly, it is not even alleged that Castro actually worked 40 hours per week. H & L, understandably, is outraged. In its view, the collective bargaining agreement sets out the employer contribution requirements (x amount per hour of actual work), and neither the union—nor its fund Trustees—can arbitrarily decide to change those terms.

In short, the Trustees have instituted this action against H & L seeking to collect the alleged contribution deficiency. In so doing, they assert that they have the authority unilaterally to adopt rules to protect the funds, and therefore that their actions are proper.

Both sides move for summary judgment.

## II. DISCUSSION

The Trustees, apparently following the same modus operandi as they employed against H & L, initiated suits against dozens of employers who are 100% family owned. Many of these suits were consolidated before Judge Hurley under the caption *LaBarbera v. J.D. Collyer Equip. Corp.*, No. 98–2818, slip op., (E.D.N.Y. May 16, 2001). Judge Johnson also ruled on a later filed case, brought by the Trustees, identical to this suit, in *King v. Marco Eugene Trucking Co.*, No. 99–7035, slip op., (E.D.N.Y. Feb. 15, 2002). Both Judge Hurley and Judge Johnson reached identical holdings in well reasoned opinions— holdings with which this Court agrees. "[Where] the precedent is from a sitting judge in one's own court, and represents [his] mature reflection, the argument in favor of following it rests not only on the appropriate amenities, but also on profounder considerations of equality in the treatment of litigants." Charles Wyzanski, *The Essential Qualities of a Judge, from The New Meaning of Justice* (1956), *reprinted in Handbook for Judges* 96 (American Judicature Society 1975).

### A. Validity of the 100 % Rule

Both parties agree that this dispute hinges on the validity of the 100% rule. The parties view the dispute differently. H & L views this as a modification of the collective bargaining agreement. Accordingly, it argues that this Court ought review such actions *de novo*. The Trustees, however, argue that they are delegated rulemaking authority to enforce their duties pursuant to ERISA. Accordingly, the Trustees argue that the rule is valid unless it is arbitrary and capricious, and

---

**4.** On being notified by the Trustees of the implementation of the 100% rule, H & L alleges it withdrew from the collective bargaining agreement. Apparently, it did not utilize enough union labor to justify remaining a party under such circumstances. The Court does not address this contention as it is irrelevant to its analysis.

cite various cases applying an "arbitrary or capricious" standard.

The adoption of the 100% rule cannot be viewed as an instance of rulemaking. Rather, the 100% rule represents a unilateral change to the collective bargaining agreement, which calls for contributions to be made on the basis of hours worked. The Trustees, in devising the 100% rule, deviated from that basic tenet. The 100% rule is thus utterly inconsistent with the collective bargaining agreement, which is predicated on an hourly wage, hourly contribution system. No rule that changes the fundamental tenet upon which the collective bargaining agreement is founded can be considered a mere implementation of the agreement. Instead, it can only be deemed a fundamental change to the agreement. Making such a change is beyond the unilateral power of Local 282 or the Trustees.

■ As such, the distinction reflected in the different standards of review is not important here. Even were "arbitrary and capricious" the correct standard to apply (i.e., even were this conceived of as an act of rulemaking) the Court concurs with both Judge Hurley and Judge Johnson, who held that the 100% rule is arbitrary and capricious, and thus violates even that lenient standard. The trust agreements (the documents creating and governing administration of the pension trusts) obligate the Trustees to collect contributions pursuant to the collective bargaining agreements. Maye Decl. ex. 1, Art. II § I, Art. III § 1, Art. III–A § 1. Those collective bargaining agreements obligate employers to make contributions on an hourly rate for each hour worked. The 100% rule, in direct contrast, obligates employers to make contributions on the basis of their status as owners. "Where the trustees of a plan impose a standard not required by the plan's provisions, or interpret the plan in a manner inconsistent with its plain words, . . . their actions may well be found to be arbitrary and capricious." *Miles v. New York State Teamsters Conference Pension & Ret. Fund Employee Benefit Plan*, 698 F.2d 593, 599 (2nd Cir.1983). The 100% rule is inconsistent with the plain words of the agreement and imposes a standard that is entirely inconsistent with that adopted in the agreement. Accordingly, this rule is fundamentally arbitrary and capricious and cannot be enforced against H & L.

### B. Fringe Benefit Contributions

■ As a fallback position, the Trustees seek to collect so-called "fringe benefit" contributions. In essence, the Trustees seek to collect contributions due for hours actually worked by employers. As Judge Hurley held, the terms of the collective bargaining agreement contemplate that contributions will be made for each hour worked—irrespective of who worked it. Accordingly, the Trustees may collect contributions due for hours actually worked by H & L's owners (including Castro).

### III. CONCLUSION

To the extent the Trustees seek summary judgment declaring the 100% rule valid, its motion [Docket No. 13] is DENIED. To the extent the Trustees seek summary judgment declaring 100% owners liable to make contributions for hours actually worked, its motion is GRANTED.

To the extent H & L seeks summary judgment declaring the 100% rule void, its motion [Docket No. 28] is GRANTED. To the extent H & L seeks summary judgment declaring it not liable for contributions for the hours actually worked by 100% owners, its motion is DENIED. In all other respects, both motions are denied.

Since resolution of these cross motions for summary judgment resolves the case, judgment will enter that, pursuant to the

collective bargaining agreement considered herein, the 100% rule is void but that the Trustees may collect contributions for the hours owners actually worked. The parties are ordered to confer and submit an appropriate order of judgment within 30 days of the date of this order.

SO ORDERED.